UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DARRIN LAPINE,

                 Plaintiff,

v.

D. MOORE et al.,

                 Defendants.

_____/

Case No. 2:22-cv-60

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 6.) The Court, therefore, is required to dismiss the action if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Moore, Gould, Hubble, Huge, Theut, Russell, and Unknown Parties. The Court will also dismiss, for failure to state a claim, the following claims against Defendant Gordon: (1) Plaintiff's First Amendment retaliation claims based upon Defendant Gordon's statements concerning a residential placement and the GPS tether; (2) Plaintiff's Fifth Amendment claims; (3) Plaintiff's Sixth Amendment claims; (4) Plaintiff's Eighth Amendment claims; and (5) Plaintiff's Fourteenth Amendment due process claims. Plaintiff's First Amendment retaliation

claim against Defendant Gordon based upon her request that Plaintiff be issued a misconduct for threatening behavior remains in the case.

**Discussion**

**I.    Factual Allegations**

Plaintiff is a former prisoner who was previously incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Hearings Administrator Richard Russell, as well as the following individuals: Captain D. Huge, Lieutenant D. Moore, Sergeant Unknown Gould, Deputy Andy Hubble, Supervisor Stephanie Gordon, Hearings Officer D. Theut, and Unknown Parties, referred to as Jane and John Does.

Plaintiff alleges that he was granted "a 12 month parole with few conditions" on February 11, 2019, and that he was scheduled to be released from NCF on March 19, 2019. (ECF No. 1, PageID.3.) At some time during the week and a half preceding his scheduled release, Plaintiff's sister's residence was not approved as Plaintiff's residence by his parole agent because Plaintiff's sister possessed a gun safe. (*Id.*) Defendant Gordon told Plaintiff that he would have to go to a residential placement. (*Id.*) Plaintiff avers that he has had issues with Defendant Gordon since "she put a wedge between her former husband, [Plaintiff's] best friend at the time and [Plaintiff], 40 years ago." (*Id.*)

Plaintiff complained to the parole office about his agent "not going back to [his] sister's residence for approval" after the gun safe was opened and shown to be empty. (*Id.*) Defendant Gordon spoke to Plaintiff again on the phone and told him that another opportunity for a walkthrough at his sister's residence was approved but threatened that Plaintiff would have to wear a GPS tether. (*Id.*) Plaintiff avers that Defendant Gordon stated, "You will wear a GPS tether when

2

you are released[;] I will see to that myself, you won't be released without a tether." (*Id.*) Plaintiff told Defendant Gordon that he would file suit against her because he was not required to wear a tether "in [his] initial probation order on this case" and that the MDOC could not mandate that he wear a tether. (*Id.*, PageID.3–4.)

Plaintiff alleges that on March 13, 2019, he communicated with his attorney, Cecilia Quirindongo Baunsoe (not a party). (*Id.*, PageID.4.) He told his attorney that his sister had not done anything he had asked her to do, and that he was so mad that he "could have choked her." (*Id.*) Plaintiff avers that this was a figure of speech. (*Id.*) Defendant Gordon reviewed Plaintiff's JPay messages, "looking for some reason to retaliate against [him] again." (*Id.*) She found the message to Plaintiff's attorney and contacted the parole board to ask that Plaintiff's parole be suspended based upon the threat to his sister. (*Id.*) Defendant Gordon contacted NCF and asked Defendant Moore to issue a "retaliatory bogus misconduct [to Plaintiff] for alleged threatening behavior." (*Id.*) Plaintiff was placed in segregation, where "constant obnoxious lights were left on all day and night," and he could not sleep. (*Id.*) Plaintiff did not receive several meals, the temperature exceeded 100 degrees, and he experienced ongoing pain in his spine, hips, and shoulders from the thin mattress. (*Id.*)

Plaintiff's parole was suspended on March 18, 2019. (*Id.*) When he received the misconduct, he told Defendants Moore and Gould that it was "bogus." (*Id.*, PageID.5.) Defendants Moore and Gould told Plaintiff that "they were told what they had to do and had to follow their orders issued by the Capt. and deputy to do what [Defendant] Gordon and the unknown parole board member wanted." (*Id.*) Plaintiff also spoke to Defendants Hubble and Huge, to no avail. (*Id.*)

Plaintiff was ultimately found guilty of the misconduct by Defendant Theut on March 21, 2019. (*Id.*) He claims that his parole was "revoked" on March 22, 2019. (*Id.*) On March 21, 2019, Prison Counselor Chad Germain (not a party) screened Plaintiff for a security level increase from one to four. (*Id.*, PageID.5–6.) Plaintiff was ultimately sent to the Saginaw Correctional Facility (SRF) in Freeland, Saginaw County, Michigan, where he was housed at security level four. (*Id.*, PageID.6.) Plaintiff was told that his security level would not have been increased if his parole had been reinstated. (*Id.*)

Plaintiff appealed the misconduct to Defendant Russell, who upheld the misconduct on June 3, 2019. (*Id.*) Plaintiff then appealed to the Macomb County Circuit Court. (*Id.*) On October 5, 2020, the misconduct was vacated. (*Id.*; ECF No. 1-1.) The circuit court concluded that Plaintiff had established error in the finding that he committed a major misconduct because the email to his attorney "was not an offer to do actual physical harm to [his] sister but hyperbole in expressing his dissatisfaction with her." (ECF No. 1-1, PageID.11.)

Plaintiff contends that he served more than two additional years in prison as a result of the "bogus retaliatory misconduct." (ECF No. 1, PageID.6.) He avers that he experienced all sorts of adverse actions, including "contracting COVID near death and being assaulted several times." (*Id.*) Plaintiff contends that those incidents would not have occurred but for Defendants' actions. (*Id.*) Plaintiff was ultimately released on parole on April 28, 2021. *See* Mich. Dep't of Corr. Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdo cNumber=305535 (last visited July 7, 2022).

Based on the foregoing, Plaintiff asserts violations of his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (*Id.*) As relief, Plaintiff seeks $500,000.00 in damages. (*Id.*)

4

## II.     Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Claims

Plaintiff references violations of his First Amendment rights but does not explicitly indicate which rights were violated. (ECF No. 1, PageID.6.) In his complaint, he appears to suggest that Defendant Gordon retaliated against him by telling him that he would have to go to a residential placement because his sister's residence had not been approved, threatening that Plaintiff would have to wear a GPS tether, and by requesting that Defendant Moore issue a false misconduct for threatening behavior to Plaintiff based upon that email.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.

6

1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the fact of retaliation regarding Defendant Gordon's statements that he would have to go to a residential placement and that she would ensure that he had to wear a GPS tether. Plaintiff's complaint is devoid of any facts suggesting that he engaged in protected activity prior to Defendant Gordon making those statements. Rather, Plaintiff connects those statements to his belief that Defendant Gordon has had an "issue" with him "since she put a wedge between her former husband, [Plaintiff's] best friend at the time and [Plaintiff], 40 years ago." (ECF No. 1, PageID.3.) Moreover, while Plaintiff alleges that he told Defendant Gordon he would file a lawsuit against her based upon her threat regarding a GPS tether, Plaintiff made that statement **after** Defendant Gordon made the alleged threat. Plaintiff, therefore, cannot maintain retaliation claims based upon Defendant Gordon's statements concerning a residential placement and the GPS tether.

Plaintiff also alleges that Defendant Gordon found his JPay message to his attorney regarding his sister and requested that Defendant Moore issue a false misconduct for threatening behavior to Plaintiff based upon that email. (*Id.*) Plaintiff was ultimately found guilty of the misconduct and his expected parole release was suspended. The finding of guilt, however, was ultimately overturned. Given these allegations, the Court concludes that Plaintiff has set forth a

plausible First Amendment retaliation claim against Defendant Gordon based upon her perusal of his JPay messages and her request that Plaintiff be issued a misconduct for threatening behavior.

### B.    Fifth Amendment Claims

Plaintiff also asserts violations of his Fifth Amendment rights. (ECF No. 1, PageID.6.) Presumably, Plaintiff is referencing the Fifth Amendment's due process clause. The Fifth Amendment, however, applies only to claims against federal employees. Here, Plaintiff has sued employees of the State of Michigan. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and such claims will be dismissed. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### C.    Sixth Amendment Claims

Plaintiff vaguely references violations of the Sixth Amendment, which states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with his witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The guarantees of the Sixth Amendment, however, are applicable only to "criminal prosecutions," *Kirby v. Illinois*, 406 U.S. 682, 690 (1972), and "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Plaintiff's Sixth Amendment claims will, therefore, be dismissed.

### D.       Eighth Amendment Claims

Plaintiff also vaguely references violations of the Eighth Amendment. (ECF No. 1, PageID.6.) In his complaint, Plaintiff references various conditions he experienced while in segregation. Specifically, Plaintiff asserts that: (1) he could not sleep because the "constant obnoxious lights were left on all day and night"; (2) he missed several meals; (3) at various points the temperature exceeded 100 degrees; and (4) he experienced severe pain in his spine, hips, and shoulders because of the thin mattress he was provided. (ECF No. 1, PageID.4.) He also references the allegedly "bogus" misconduct. (*Id.*, PageID.5.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As an initial matter, the filing of an allegedly false misconduct report does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). With respect to Plaintiff's allegations concerning meals, "[t]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution

"does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *see also Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding the deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (finding the denial of a few meals over several months does not state a claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding the deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim). Here, Plaintiff's vague allegation that he "was not provided all [his] meals [because] several were skipped in a row" (ECF No. 1, PageID.4), coupled with an absence of allegations that Plaintiff's health suffered because of the skipped meals, fails to state a claim under the objective prong of the deliberate indifference standard.

With respect to Plaintiff's claim regarding the temperature, courts have concluded that inadequate ventilation, leading to increased temperatures, may result in a sufficiently serious risk to prisoner safety under the Eighth Amendment. *See, e.g., White v. Monohan*, 326 F. App'x 385 (7th Cir. 2009) (reversing district court dismissal of claim alleging that inadequate ventilation permitted temperatures to reach 110 degrees during the summer months); *Gates v. Cook*, 376 F.3d

323 (5th Cir. 2004) (finding that the Eighth Amendment was violated by a ventilation system that allowed summer temperatures to average in the 90s, unless prison officials took measures to ameliorate the heat by providing fans, ice water and daily showers. However, absent such extreme conditions raising serious risks to prisoner health, courts routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim. *See, e.g., Vasquez v. Frank*, 290 F. App'x 927 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five or eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment, where such temperatures were expected and tolerated by the general public in Florida); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (upholding the dismissal of a prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation), *overruled on other grounds by Maben v. Thelen,* 887 F.3d 252 (6th Cir. 2018); *Bourrage v. McFarland*, No. 99-60923, 248 F.3d 1143, 2001 WL 185034 (5th Cir. Feb. 6, 2001) (upholding dismissal of a prisoner's claim that inadequate ventilation had led to his prescription for an Albuterol Inhaler); *Jasman v. Schmidt*, 4 F. App'x 233, 235–36 (6th Cir. 2001) (affirming dismissal of a claim that the weatherstripping on the doors of the cells at a Michigan prison prevented air circulation and resulted in inadequate ventilation); *Davis v. Crowley*, No. 00-1475, 238 F.3d 420, 2000 WL 1871891 (6th Cir. Dec. 12, 2000) (concluding that a plaintiff's allegations that a ventilation system smelled strongly of gas did not allege a sufficiently serious harm where, despite his allegations that the fumes caused him to experience shortness of breath and watery eyes, the plaintiff failed to allege a substantial risk of

serious harm); *Thompson v. Cnty. of Medina*, 29 F.3d 238 (6th Cir.1994) (upholding a dismissal of pretrial detainees' claim that a jail had inadequate ventilation). Here, Plaintiff fails to allege any facts from which the Court could infer that he suffered any health risks because of the temperature. Moreover, Plaintiff fails to allege any facts that the named Defendants were aware of the temperature and deliberately failed to take action to alleviate it.

Plaintiff also takes issue with the constant lighting in segregation, which interfered with his sleep. The Court recognizes that "sleep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). However, Plaintiff's vague allegations do not rise to the level of an Eighth Amendment violation. While Plaintiff alleges that the lighting interfered with his sleep, his complaint is devoid of facts from which the Court could infer that any of the named Defendants were aware of Plaintiff's issues with the lighting and deliberately ignored them. *See, e.g.*, *Chavarria v. Stacks,* 102 F. App'x 433, 435 (5th Cir.2004) (holding that constant illumination of a prison administrative unit at night in order to prevent guards from being assaulted was a reasonable security measure and thus did not violate the Eighth Amendment); *Zatko v. Rowland,* 835 F. Supp. 1174, 1181 (N.D. Cal. 1993) (noting that continuous light depriving a prisoner of sleep would be unconstitutional but holding there was no constitutional violation because the officers did not use the light to keep the prisoner awake).

Finally, Plaintiff asserts that he experienced severe pain in his hips, back, and spine because of the thin mattress. "Being given a mattress only one-fourth to one-half inch thick falls short of being an intolerable condition. It doubtlessly was uncomfortable, but it cannot be described as intolerable." *White v. Tenn*., No. 2:14-cv-115, 2014 WL 3339625, at *10 (E.D. Tenn. July 8, 2014); *see also Richmond*, 450 F. App'x at 455 ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate

the Eighth Amendment.") (citations omitted). While Plaintiff does allege that he experienced pain as a result of sleeping on the thin mattress, he again fails to allege any facts suggesting that any of the named Defendants were aware of these issues and deliberately ignored them.

In sum, Plaintiff has failed to allege facts suggesting that he suffered from extreme deprivations and that Defendants were deliberately indifferent to such deprivations. Plaintiff's Eighth Amendment claims concerning the conditions of confinement in segregation will, therefore, be dismissed.[1]

### E.      Fourteenth Amendment Claims

#### 1.      Interference with Parole

Plaintiff appears to suggest that Defendants violated his Fourteenth Amendment due process rights by interfering with his parole. As set forth above, Plaintiff was due to be released on parole in 2019, but his parole was suspended when he was found guilty of a threatening behavior misconduct. That misconduct, however, was later vacated.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

---

[1] Plaintiff argues that, but for Defendants' actions, he would not have contracted COVID and would not have been assaulted. (*Id.*, PageID.6.) To the extent he intends to raise Eighth Amendment claims based upon these issues, he fails to state a plausible claim for relief. As noted *supra*, Plaintiff was transferred to SRF after his security level was raised. He does not allege that any of the Defendants were employed there. Moreover, he fails to allege any facts from which the Court could plausibly infer that Defendants were aware of any risks posed to Plaintiff by COVID-19 and his assailants and were deliberately indifferent to such risks.

Plaintiff, however, fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

The Court recognizes that Plaintiff alleges that his parole was "revoked" on March 22, 2019. (ECF No. 1, PageID.5.) However, Plaintiff's complaint makes clear that he was never

actually released from prison in 2019. It appears that Plaintiff uses the word "revoked" when rescinded is more apt.

The fact that the Michigan Parole Board set March 19, 2019, as a conditional date for Plaintiff's release on parole did not create a liberty interest in release. The Supreme Court has considered a substantially similar scenario:

> In *Jago v. Van Curen*, 454 U.S. 14, 14–18 . . . (1981), the Ohio Adult Parole Authority ("OAPA") ordered a prisoner's release on parole on a date certain. The prisoner attended and completed required prison pre-release classes. Before the prisoner was released from prison on parole, the OAPA learned that the prisoner had not been truthful in his parole interview or in the parole plan submitted to his parole officers and, therefore, rescinded its earlier release decision. The Supreme Court recognized that the new parole decision visited a "grievous loss" on the prisoner but, nevertheless, held that because the prisoner had not been physically released from prison, and because Ohio law allowed for the suspension or rescission of a projected parole release at any time before the prisoner was actually physically released, the prisoner did not have a protected liberty interest in release sufficient to invoke the procedural protections of the Due Process Clause. *Id.* at 17.

*Corsetti v. Rapelje*, No. 13-cv-14138, 2013 WL 6546011, at *3 (E.D. Mich. Dec. 13, 2013) (relying upon *Jago* to dismiss a petitioner's § 2254 petition challenging the Parole Board's decision to suspend its decision to release petitioner on parole). Michigan law provides that "a parole order may be rescinded at the discretion of the parole board for cause before the prisoner is released on parole." *See* Mich. Comp. Laws § 791.236(2). Moreover, "nothing in Michigan's statutes or regulations limits the Board's discretion during the period between selection or announcement of a parole date and an inmate's actual release on parole." *Hughes v. White*, No. 02-CV-73957-DT, 2003 WL 21911216, at *3 (E.D. Mich. July 30, 2003).

Under this authority, Plaintiff had no reasonable expectation of liberty until he had served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *See Greenholtz*, 442 U.S. at 11. "A constitutionally significant change of status occurs only after the prisoner has experienced rather than merely

16

expected the liberty of actual release on parole from physical custody." *Hughes*, 2003 WL 21911216, at *4. Plaintiff simply did not have "a sufficient liberty interest in his future parole release to be entitled to due process in his parole release proceedings." *Sharp v. Leonard*, 611 F.2d 136, 137 (6th Cir. 1979). Even if Defendants' actions somehow interfered with Plaintiff's anticipated parole, that interference does not implicate the protections of the Due Process Clause. Plaintiff's Fourteenth Amendment claims concerning interference with his parole will, therefore, be dismissed.

### 2.    Misconduct Proceedings

Plaintiff avers that Defendants violated his Fourteenth Amendment due process rights by issuing a false misconduct for threatening behavior and finding him guilty of that misconduct.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect

the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

MDOC policy provides that threatening behavior is a Class I misconduct. *See* MDOC Policy Directive 03.03.105, Attach. A (eff. July 1, 2018). A Class I misconduct is a "major" misconduct for which prisoners may be deprived of good time or disciplinary credits. *Id.* ¶¶ B, AAAA. An individual like Plaintiff, who at the time was serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34; *see also* OTIS, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=305535 (last visited July 7, 2022). Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. Mich. Comp. Laws § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. Here, Plaintiff mentions that his expected release on parole was suspended as a result of the misconduct conviction. While Plaintiff would presumably claim that such an action was significant deprivation, as explained above, Plaintiff had no constitutional or inherent right to release before the expiration of his sentence. *See Greenholtz*, 442 U.S. at 7. Moreover, while Plaintiff contends that his security classification level was increased from one to a four and that he was transferred to a different facility as a result of that increase, such results do not amount to atypical and significant hardships. *See Moody v. Daggett*,

18

429 U.S. 78, 88 n. 9 (1976) (concluding that prisoners have no constitutional entitlement to a particular classification or eligibility for rehabilitative programs sufficient to invoke due process); *see also Guile v. Ball*, 521 F. App'x 542, 544 (6th Cir. 2013) (stating that "[a]lthough the indefinite confinement of a prisoner to administrative segregation or the transfer to a type of maximum security facility with virtually no sensory or environmental stimuli can create a liberty interest due to its 'atypical, significant deprivation,' a simple transfer, issuance of a major misconduct ticket, and a higher security classification does not trigger a liberty interest") (internal citations omitted).

To the extent Plaintiff was placed in segregation for a period of time as a result of the misconduct ticket, he fails to allege that such placement constituted an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the United States Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

For all the foregoing reasons, Plaintiff cannot maintain a Fourteenth Amendment due process claim against Defendants premised upon his receipt of an allegedly false misconduct.[2]

## **Conclusion**

Having conducted the required review, the Court determines that Defendants Moore, Gould, Hubble, Huge, Theut, Russell, and Unknown Parties will be dismissed for failure to state a claim, under 28 U.S.C. § 1915(e)(2). The Court will also dismiss, for failure to state a claim, the following claims against Defendant Gordon: (1) Plaintiff's First Amendment retaliation claims based upon Defendant Gordon's statements concerning a residential placement and the GPS tether; (2) Plaintiff's Fifth Amendment claims; (3) Plaintiff's Sixth Amendment claims; (4) Plaintiff's Eighth Amendment claims; and (5) Plaintiff's Fourteenth Amendment due process claims. Plaintiff's First Amendment retaliation claim against Defendant Gordon based upon her request that Plaintiff be issued a misconduct for threatening behavior remains in the case.

---

[2] To the extent Plaintiff intended to raise a substantive due process claim, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the misconduct proceedings. Consequently, any intended substantive due process claim will be dismissed.

An order consistent with this opinion will be entered.


Dated:   July 25, 2022                           /s/ Jane M. Beckering
                                                 Jane M. Beckering
                                                 United States District Judge