UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARRIN LAPINE,                                    Case No. 2:22-cv-60

        Plaintiff,                           Hon. Jane M. Beckering
                                             U.S. District Judge
v.

STEPHANIE GORDON,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendant Gordon's motion for summary judgment. (ECF No. 37.)

Plaintiff — former state prisoner Darrin LaPine — filed suit in accordance with 28 U.S.C. § 1983 on March 23, 2022. (ECF No. 1.) In his complaint, LaPine asserted various Constitutional claims against employees of the Michigan Department of Corrections (MDOC) that arose during his term of incarceration. At this stage of the case, only one claim remains: LaPine's claim against Defendant Stephanie Gordon for asking another employee to issue LaPine a retaliatory misconduct ticket. (*See* ECF No. 7 (Screening Opinion); ECF No. 8 (Order).) LaPine avers that he was scheduled to be released from prison, but after he threatened to file a lawsuit against Gordon, she went searching through his communications for something to use against him. (ECF No. 1, PageID.3-4.) Gordon found an email to LaPine's attorney, in which

LaPine expressed that he was so angry with his sister that he "could have choked her." (*Id.*, PageID.4.) Gordon reported this communication and LaPine was issued a misconduct ticket for threatening behavior. (*Id.*)

Gordon now moves for summary judgment as to LaPine's remaining claim. (ECF No. 37.) Gordon asserts that she is entitled to summary judgment for a host of reasons. First, Gordon says that she was not personally involved in the decision to issue LaPine a misconduct ticket; she did not have the authority to direct another MDOC official to issue a misconduct ticket. (*Id.*, PageID.145-146.) Second, Gordon argues that LaPine was not engaged in protected conduct when he threatened to file a frivolous lawsuit against her if he was placed on a GPS tether following his release from prison. (*Id.*, PageID.147-148.) Third, Gordon says that she searched LaPine's communications prior to release and reported the concerning communication to the parole board as part of a routine investigation; she would have done the same regardless of LaPine's threat to file a lawsuit against her. (*Id.*, PageID.151.) Fourth, Gordon says that she is entitled to qualified immunity in her personal capacity. (*Id.*, PageID.152-153.) And fifth, Gordon says that she is entitled to sovereign immunity in her official capacity. (*Id.*, PageID.153-154.)

The undersigned respectfully recommends that the Court grant Defendant Gordon's motion for summary judgment (ECF No. 37). In the undersigned's opinion, there are no genuine issues of material fact. LaPine was not engaged in protected conduct when he threatened to file a frivolous lawsuit against Gordon. Further, LaPine has provided no evidence that Gordon was directly involved in the issuance

2

of the allegedly retaliatory misconduct ticket. And in the undersigned's opinion, Gordon is entitled to qualified immunity in her personal capacity and sovereign immunity in her official capacity.

## II. Factual Allegations

The undersigned previously summarized LaPine's factual allegations as follows:

> LaPine says that he was incarcerated at the Newberry Correctional Facility (NCF) in February of 2019 when he was issued a twelve-month parole and scheduled for release on March 19, 2019. (ECF No. 1, PageID.3.) LaPine intended to reside with his sister, but the residence was not approved because his sister had a gun safe. LaPine says that Defendant Stephanie Gordon[1] informed him that he would have to go to a residential placement instead. (*Id.*)
>
> According to LaPine, his relationship with Defendant Gordon was strained based on events occurring in their personal lives many years ago. LaPine also says that Gordon previously falsified court records, perjured herself while testifying against LaPine, and "had [him] sent to prison on a bogus probation violation . . . in 2012, after [he] challenged placement issues." (*Id.*) LaPine says that after he was sent to prison on a sham probation violation, he filed a lawsuit. That lawsuit was ultimately dismissed. (*Id.*)
>
> After placement at his sister's residence was denied, LaPine says that he complained to his parole officer. LaPine told the officer that although his sister had a gun safe, the safe was empty, and no one could open it. (*Id.*) Gordon later informed LaPine that they had approved an additional walk-through of LaPine's sister's residence, but that she would make sure LaPine had to wear a tracking device if he was released. Because his parole order did not contain any reference to a tracking device, LaPine threatened to file a lawsuit against Gordon. (*Id.*, PageID.3-4.)

---

[1] At the time, Gordon worked for the MDOC as a Probation and Parole Supervisor at the Chippewa County Probation and Parole Department. (ECF No. 38-2, PageID.158 (Gordon Aff.).) Gordon was not LaPine's supervising agent, but she conducted routine investigations into individuals set to be released on parole. (*Id.*, PageID.159.)

3

On March 13, 2019, LaPine received a J-Pay[2] communication from his attorney. (*Id.*, PageID.4.) He responded to the communication, venting about his sister and her failure to adhere to LaPine's requests, which had jeopardized his release. In his reply, LaPine stated that his sister had him "so mad [he] could have choked her." (*Id.*) LaPine says that there was no threat behind his statement; it was a mere figure of speech. But on March 18, 2019, LaPine says that Gordon searched through his J-Pay communications for something to use against him. (*Id.*) Upon finding LaPine's statement that he was so mad he could have choked his sister, Gordon contacted the parole board and asked for LaPine's parole to be suspended due to threatening behavior, and then contacted an NCF Lieutenant and asked him to write a misconduct ticket against LaPine for the same. LaPine says that this misconduct ticket was retaliatory and bogus. (*Id.*) LaPine's parole was suspended the same day, and he was placed in segregation.

LaPine says that he explained to numerous NCF staff members that the misconduct was bogus and retaliatory. (*Id.*, PageID.5.) But on March 21, 2019, LaPine was found guilty of the threatening behavior misconduct ticket, and staff increased LaPine's security level from three to four. (*Id.*, PageID.5-6.) On March 22, 2019, MDOC staff approved LaPine's transfer to a level four housing unit at a different facility, and the parole board revoked LaPine's parole. (*Id.*) LaPine appealed the misconduct ticket and parole suspension to the MDOC Hearings Administrator. (*Id.*, PageID.6.) LaPine's appeal was denied on June 3, 2019. LaPine then appealed the decision of the Hearings Administrator to the Macomb Circuit Court (*Id.*) On October 5, 2020, the Macomb Circuit Court vacated the misconduct ticket and parole suspension. (*Id.*)

(ECF No. 35, PageID.88-90.)

III. **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

---

2   JPay is the system through which MDOC prisoners send and receive electronic messages. *Electronic Messages – Sending to Prisoners*, Department of Corrections, https://www.michigan.gov/corrections/services/family-information/electronic-messages-sending-to-prisoners (last visited Nov. 9, 2023).

4

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**IV.     Analysis**

As set forth above, LaPine's sole remaining claim is "a retaliation claim against Defendant Gordon based upon her perusal of his JPay messages and her request that Plaintiff be issued a misconduct for threatening behavior." (ECF No. 7, PageID.30.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

5

### a. Protected Conduct

The undersigned first addresses Gordon's argument that LaPine's threat to file a lawsuit against Gordon did not constitute protected conduct.

As a starting point, the undersigned acknowledges that protected conduct generally includes a prisoner's pursuance of oral and written grievances, *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), as well as his efforts to access the courts in "direct appeals, habeas corpus applications, and civil rights claims," *Thaddeus-X*, 175 F.3d at 391. However, those efforts are only protected to the extent that the prisoner's underlying grievance is non-frivolous. *Maben*, 887 F.3d at 264 (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "An 'inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory.'" *Id.* (quoting *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002)).

Per LaPine's complaint, he threatened to file a lawsuit against Gordon after she told him he would have to wear a GPS tether upon his release from prison. (*Id.*, PageID.3.) LaPine said that he would file suit because he "was not required to wear a tether in [his] initial probation order on this case, nor [his] initial parole order, nor was it within MDOC policy or procedure for [him] to wear a tether." (*Id.*, PageID.3-4.) But LaPine does not identify, nor can the undersigned discern, any civil rights claims that LaPine could have asserted against Gordon were his conditions of parole amended to include GPS monitoring. Moreover, it is the parole-board, not Gordon, that makes the ultimate decision as to the terms of parole, including among them any

6

use of GPS monitoring. *See* Mich. Comp. Laws § 791.236 ("All paroles must be ordered by the parole board and must be signed by the parole chairperson. . . . When a parole order is issued, the order must contain the conditions of the parole and must specifically provide proper means of supervision of the paroled prisoner in accordance with the rules of the field operations administration.")

In his response to Defendants' motion for summary judgment, LaPine argues that a prison staff member informed LaPine that Gordon requested the GPS tether on LaPine. (ECF No. 45, PageID.214.) And he says that, at least at the time, tethering was not permitted for an individual with his convictions. Furthermore, LaPine says there were additional instances of protected conduct than his threat to file a lawsuit, including previous lawsuits and grievances, and a threat to contact Gordon's ex-husband for assistance.[3] (*Id.*)

But once again, LaPine fails to identify a non-frivolous claim against Gordon arising out of their discussions regarding the conditions of his release/GPS monitoring. And this Court has expressly narrowed LaPine's remaining retaliation claim to his threat to file a lawsuit against Gordon related to the use of GPS tethering. Indeed, the Court noted in its screening opinion that: "Plaintiff's complaint is devoid of any facts suggesting that he engaged in protected activity prior to Defendant Gordon making those [GPS-related] statements." (ECF No. 7, PageID.29.) LaPine

---

[3] In his complaint, LaPine alleges that he and Defendant Gordon's ex-husband used to be best friends. (ECF No. 1, PageID.3.)

7

cannot now utilize his response to Gordon's motion for summary judgment to expand his remaining claim or to add new retaliation claims.

Ultimately, it is the undersigned's opinion that there are no genuine issues of material fact and LaPine's threat to file a lawsuit, which forms the protected conduct element of his retaliation claim, was frivolous. Accordingly, it is the undersigned's opinion that Defendants are entitled to summary judgment. But even if LaPine's threat to file a lawsuit constituted protected conduct, the undersigned notes that LaPine's claim would fail on its second element: adverse action.

### b. Adverse Action

LaPine alleges that Gordon sifted through his JPay communications until she found a communication that she could use against him. (ECF No. 1, PageID.4.) LaPine says that Gordon then contacted an NCF employee and asked him to issue a retaliatory misconduct ticket for threatening behavior based on the communication. (*Id.*)

To establish the second element of a retaliation claim, a plaintiff must show an adverse action by a prison official that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Misconduct tickets are often recognized as adverse actions sufficient to support a retaliation claim. *See Brown v. Crowley,* 312 F.3d 782 (6th Cir. 2002) (finding that the issuance of a major misconduct ticket, which subjected the prisoner to a risk of segregation, loss of good time, and a longer term of incarceration, was sufficiently adverse); *Maben*, 887 F.3d at 266-267 (finding that the issuance of a minor misconduct ticket was sufficiently adverse where the prisoner lost privileges and could have been confined to his cell). Gordon does not contest this point. Instead, Gordon argues that LaPine has provided no admissible evidence that she was involved in issuing the threatening behavior misconduct ticket. (ECF No. 38, PageID.145-146.) In fact, Gordon attests that she did not have the authority to issue a misconduct ticket, that she did not request that any NCF employee issue LaPine a misconduct ticket, and that she did not have the authority to order an NCF employee to issue LaPine a misconduct ticket. (ECF No. 38-2, PageID.161.) Gordon says that all she did was identify the concerning email during her routine search and forward it to her supervisor in accordance with protocol. (*Id.*)

For a state actor to be held personally liable under § 1983, they must have been personally involved in the violation of the plaintiff's rights. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005); *Bennett v. Schroeder*, 99 F. App'x 707, 713-714 (6th Cir. 2004). LaPine alleges that Gordon "contacted NCF, requesting Lt. D. Moore to write a retaliatory bogus misconduct on [LaPine] for alleged threatening misconduct." (ECF No. 1, PageID.4; *see also* ECF No. 46, PageID.233 (LaPine Aff.)) But LaPine does not provide any evidence that such a communication occurred. In

9

his complaint, LaPine says that he told NCF officers that the misconduct ticket was bogus during his misconduct review, and that the officers told LaPine that they had to follow the directions given to them by their Captain, and to their Captain by the Parole Board and Defendant Gordon. (*Id.*, PageID.5.) But that allegation is hearsay. *See* Fed. R. Evid. 802(c) (defining hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.") A party opposing a motion for summary judgment cannot use hearsay evidence to create a genuine issue of material fact. *See Weberg v. Franks*, 229 F.3d 514, 526 n.3 (6th Cir. 2000) (disregarding allegations made in a verified complaint on the grounds that they were based on hearsay rather than personal knowledge).

Accordingly, even if the Court determines that there are genuine issues of fact bearing on the protected conduct element of LaPine's claim, the undersigned recommends that the Court grant Defendant Gordon's motion for summary judgment. LaPine has provided no evidence that Defendant Gordon was directly involved in that adverse action underlying his remaining retaliation claims.[4]

---

[4] Because it is the undersigned's opinion that LaPine's threat to file a lawsuit against Gordon if he was placed on a GPS tether following his release from prison was frivolous, and that LaPine has not provided evidence that Gordon was involved in the issuance of the allegedly retaliatory misconduct ticket, the undersigned declines to consider whether Gordon has established a legitimate, non-retaliatory reason for issuing the misconduct ticket.

10

## V. Qualified and Sovereign Immunities

Gordon concludes her motion for summary judgment by asserting she is entitled to both qualified and sovereign immunity. (ECF No. 38, PageID.152-154.)

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). As explained by the Court in *Pearson v. Callahan*, a qualified immunity analysis involves two determinations: (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right," and (2) "whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may make these determinations in either order. *Id.* at 236.

Gordon's argument for qualified immunity is largely redundant. After initially arguing that she is entitled to judgment because she did not violate LaPine's First Amendment rights, she argues that she is entitled to qualified immunity because she did not violate LaPine's first Amendment rights. In other words, Gordon does not contend that the rights at issue were not clearly established at the time of her alleged misconduct. In any event, the undersigned agrees; because it is the undersigned's opinion that there are no genuine issues of material fact and that Gordon did not

11

violate LaPine's First Amendment rights, it is the undersigned's opinion that Gordon is entitled to qualified immunity.

Gordon's claim for sovereign immunity is different. Gordon argues that she is entitled to sovereign immunity in her official capacity as to LaPine's claims for monetary damages regardless of the merits of LaPine's claims.

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). LaPine sues Gordon in her official and individual capacities for monetary damages. (ECF No. 1, PageID.1, 6.) As such, it is the undersigned's opinion that Gordon is entitled to sovereign immunity in her official capacity in accordance with Eleventh Amendment.

## VI. Recommendation

The undersigned respectfully recommends that the Court grant Defendant Gordon's motion for summary judgment (ECF No. 37). In the undersigned's opinion, there are no genuine issues of material fact. LaPine was not engaged in protected

12

conduct when he threatened to file a frivolous lawsuit against Gordon. Further, LaPine has provided no evidence that Gordon was directly involved in the issuance of the allegedly retaliatory misconduct ticket. And in the undersigned's opinion, Gordon is entitled to qualified immunity in her personal capacity and sovereign immunity in her official capacity.

If the Court accepts this recommendation, this case will be dismissed.


Dated: November 20, 2023               /s/ *Maarten Vermaat*
                                       MAARTEN VERMAAT
                                       U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C) Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).